THE CARL GUSTAF.

LOXLEY et al. v. THE CARL GUSTAF et al.

(Circuit Court of Appeals, Fifth Circuit. December 19, 1892.)

No. 76.

1. COLLISION—TUGS AND TOW—RAFTS.
   A Russian bark was being towed from the city of Mobile, through the Mobile river to the bay, and, having passed the turn stake, was following the dredged channel southeastward. At the same time a small tug, with two rafts of logs, the first on a line 200 feet long, and the other astern of it, both aggregating about 900 feet, was coming down the Blakely river channel from the northeast. The parties on the tug could see the bark for a mile or more, and those on the bark could see the tug about a half mile away. The tug first reached the junction of the two channels, and turned northwestward, towards Mobile, keeping as close as possible to the northern edge of the channel. Signals were exchanged to pass port to port, and the bark kept as close as possible to the south bank of the channel, leaving about 800 feet between them. It was ebb tide, and the current swept diagonally across the channel, and carried the rafts so far over that they came into collision with the bark, and were broken apart, some of the logs being lost. The bark was proceeding at moderate speed, and could not have stopped at any time shortly before the collision without going aground. The tug was not of sufficient force to carry the rafts at a speed which would prevent their drifting, and her master testified that the rafts were not of sufficient strength to stand a much greater rate of speed without breaking. Held, on a libel to recover for the lost logs, that the bark was not in fault, as, being a foreigner, her master could not be presumed to know the peculiarities of the local navigation; nor was the fact that she was in charge of a bay pilot sufficient to charge her with such knowledge and extraordinary precautions as would have been necessary to counteract the effects of the insufficiency of libelant's tug and the unwieldy proportions and feeble construction of the rafts.

2. SAME.
   If there was any fault, it was on the part of those in charge of the rafts, who were regularly engaged in the business of towing logs through the channel, and attempted the passage with a full knowledge of its dangers.

Appeal from the District Court of the United States for the Southern District of Alabama.

In Admiralty. Libel by J. E. Loxley & Son against the Russian bark Carl Gustaf and Gustaf Lindquist, her master, to recover damages for a collision with a raft belonging to libelants, whereby some of the logs were lost. The district court entered a decree for the libelee, and libelants appeal. Affirmed.

Statement by LOCKE, District Judge:

On the 25th of February, 1892, the Russian bark Carl Gustaf was being towed to the bay from the city of Mobile. Her course was south through the river, then to the southeastward through a dredged channel to the turn stake, where the channel turned again directly to the south. This dredged channel had a depth of 17 feet for a width of from 120 to 240 feet, but for some 500 feet outside the channel on the northern side the water was sufficiently deep for a vessel drawing from 5 to 6 feet, making a channel of about 800 feet in width for light draft vessels.

Coming down from the northeast and uniting with the waters of Mobile river at the point of the dredged channel and the turn stake, came the waters of the Blakely and Spanish rivers, the channels uniting in the form of the letter Y. The channels were in the bed of Mobile bay with surrounding shoal water, and the force of the tide at its ebb was southward, and rather obliquely across the channels than along them. As the bark was coming down the Mobile river from the northwest, drawing 17 feet of water, and towed by two tugs,—one large one, lashed to her quarter, and a smaller one, with a hawser of 150 feet, ahead,—libelants' tug, the Alert, was coming down the Blakely river channel from the northeast with two rafts of logs. She was a small tug, drawing but 5½ feet, having one raft at the end of a line 200 feet long, with another raft made fast to the first; in all, 932 logs, extending 900 feet astern of the tug. She was of comparatively small force, and had been coming down the river with the assistance of the tide but a half or three quarters of a mile per hour. Those on the Alert could see the bark over Pinto island coming down Mobile river for a mile or two, and those on the bark could see the Alert and her tow as soon as they came past Pinto island, about a half mile. The Alert reached the point where the channels met and entered the dredged channel heading for Mobile a little before the bark entered the channel from Mobile river and took the extreme northern side, where, on account of her light draft, she could go close to the shoal bank leaving on her port or south side a channel of about 800 feet in width. The bark kept the extreme southern bank as closely as she could go safely, going very slowly,—the testimony is, with just speed enough to keep steerage way. As the Alert approached the tug towing the bark, each announced its determination to pass to the starboard by blowing one whistle. The Alert passed the bark in safety, but the rafts astern, swept by the tide to the southward, swung entirely across the channel, so that, although the tug ahead of the bark managed to get through, before the bark could pass the raft had blocked quite or very nearly the entire channel, and the bark collided with it, breaking the log by which the two rafts were held together, parting the boom, and letting many of the logs go adrift, by which some were lost, for which libelants have brought this suit.

It was agreed between the parties that the tug Alert was keeping as far as possible to the northern, or her starboard, shore, and the bark as far as possible to the southern, or her starboard shore. Nor is it disputed or questioned that, had the bark stopped her headway at any time shortly before striking the raft, she would have gone aground. In the court below the libel was dismissed, from which decision libelants have brought this appeal.

R. Inge Smith, for appellants.
H. Pillans, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

LOCKE, District Judge, (after stating the facts.) The three unusual conditions attending the meeting of these vessels, which, in spite of a careful observance of all ordinary rules of navigation resulted in a collision, were: First, the lack of strength and power of libelants' tug to keep its tow in line; second, the length and unwieldy character and weakness of construction of the tow, the master of the Alert testifying that it would not have stood being pulled fast enough to keep from sagging; and, thirdly, the peculiar course of the tide, which, instead of flowing through the channel lengthwise, rather swept across it.

Two of these peculiarities pertained alone to the libelants' tug and tow; the third was particularly within the knowledge of those in charge of them. They were regularly engaged in towing the same character of rafts through this channel, and must be presumed to be fully aware of the course, direction, and force of the tides, and the dangers attending its navigation. Not so the master of the bark. She was a foreign vessel, and he, presumably, unaccustomed to the peculiarities of local navigation, and, although that would in no wise excuse him from ordinary care and precaution upon meeting and approaching vessels, the decree of preliminary and anticipatory care in which he is charged to have been wanting could not be demanded. Nor would the fact of her being in charge of a bay pilot require such knowledge and extraordinary precaution as would have been necessary to counteract the effects of the insufficiency of libelants' tug for the occasion, and the unwieldy proportions and feeble construction of the raft. There were no circumstances apparent that could inform any one in charge of the bark that in entering an open channel nearly 800 feet wide, with no visible obstruction, it was to be so completely blocked before he got through that, keeping as closely as possible to the starboard bank, he would be forced into collision with a raft in tow of a steamer upon the further side of the channel.

As far as the bark is concerned, we consider it an unavoidable accident, as it is impossible to see that she was in any way in fault. She had entered an open channel of sufficient width, had taken and kept the proper position, close to the starboard bank, was pursuing her way in a slow and cautious manner, conforming to the signal of libelants' tug, and in all ways observing the rules of navigation. It was an accident unforeseen even by the master of the Alert, who, until the very moment of the collision, thought there would be room for her to pass. If there was any fault it was on the part of those in charge of libelants' property, who, knowing, as they did, the risks of the passage, attempted it with a full knowledge of its dangers.

It is ordered the judgment below be affirmed, with costs.